THE STATE OF OHIO, APPELLEE, *v.* SMITH, APPELLANT.

(No. 5358—Decided December 27, 1960.)

*Mr. Harry Friberg*, prosecuting attorney, for appellee.
*Messrs. Cubbon & Rice*, for appellant.

FESS, J. This is an appeal on questions of law from a judgment and sentence of defendant-appellant upon a verdict of the jury finding defendant guilty of sodomy. The principal error assigned is the admission of testimony pertaining to a polygraph test given defendant.

Upon direct examination of a state highway patrolman, who had interviewed the defendant after his arrest, the following transpired:

"Now Officer Blay, did you ask him at that time whether or not he would take a polygraph test which is a lie detector test?

"Mr. Ischler: Objection.

"The Court: Overruled.

"A. Yes, I did.

"Q. What was his response? A. He replied 'Yes' and I said 'If the lie detector says you have committed sodomy do you then believe it?' and his answer was 'yes.'

"Q. Did that terminate your examination? A. Yes. I

figured if he would take the polygraph test that it would state whether he was innocent or guilty and I was willing to go along with it at that time, if it showed he was absolutely innocent we would reduce it to contributing to a delinquency.

"Mr. Ischler: Move that be stricken.

"The Court: May go out."

Upon cross-examination, the defendant was interrogated as follows:

"Q. Mr. Smith, in this statement they took out there they mentioned lie detector or polygraph which you said you would take. Did officer Blay allow you to take one of those?

"Mr. Ischler: Objection.

"The Court: Overruled.

"Mr. Ischler: Exception.

"A. No, sir, he didnt have me take it.

"Q. Did you have an attorney at that time? A. Yes sir, I did—no, not at that one time, right then, no.

"Q. Did you get an attorney? A. I got another attorney.

"Q. Mr. Ischler? A. No.

"Q. Another attorney? A. Yes.

"Q. Did that other attorney arrange for a polygraph test? A. No, the one I got didn't but the assistant did.

"Q. Who is the assistant? A. I couldn't think of his name.

"Q. A third attorney? A. Mr.—

"Q. Schminck? A. Mr. Schminck.

"Q. Did he arrange for the polygraph test? A. He did.

"Q. Was that at your request? A. He said he thought it would be a good idea and I took it.

"Q. That was at your request? A. Yes.

"Q. You took one? A. Yes.

"Q. Do you know the results of that?

"Mr. Ischler: Objection.

"The Court: Overruled.

"Mr. Ischler: Exception.

"A. No one ever told me.

"Q. You don't know the result? A. They didn't show it to me."

The courts of this country almost uniformly reject the results of lie detector tests when offered in evidence by either

a defendant or the prosecution for the purpose of establishing the innocence or guilt of the accused because the lie detector has not yet attained scientific acceptance as a reliable and accurate means of ascertaining truth or deception. 23 A. L. R. (2d), 1308, and authorities cited from California, District of Columbia, Kansas, Missouri, Nebraska, North Dakota, Oklahome and Wisconsin. See also A. L. R. (2d), 1960 Supplement, p. 1998, citing additional recent authorities.

The only Ohio case which has come to our attention is *Parker* v. *Friendt*, 99 Ohio App., 329, a civil case, wherein the Court of Appeals of Cuyahoga County follows the uniform rule that the results of such tests are inadmissible. Also see paragraph 5 of the syllabus in *State* v. *Sheppard*, 100 Ohio App., 399, excluding expert testimony of the result of a blood test offered by defendant. In addition to the factor that such tests lack scientific reliability, the introduction of the results of such tests usurps the function which a jury has traditionally exercised throughout the history of Anglo-Saxon jurisprudence.

But the question presented here is whether mention of the fact that a lie detector test was taken, without disclosure of its results, prejudices the defendant. In general, the injection into a trial of an extraneous issue is erroneous. Thus, evidence in a personal injury action that a defendant carries liability insurance is inadmissible because such evidence is irrelevant and has a tendency to adversely influence the jury. And, depending on the circumstances, admission of such evidence may be prejudicial, requiring reversal of the judgment. 4 Ohio Jurisprudence (2d), 106-108, 191, 198-199; see also page 226.

An inquiry into facts entirely collateral, leading to controversy over matters foreign to the prosecution, is not to be permitted. Cf. *Devere* v. *State*, 5 C. C., 509, 3 C. D., 249. Thus, the general rule, with many exceptions, is that in the prosecution of one offense, it is not competent to prove that an accused has committed another separate, independent offense, for the purpose of showing that he committed the particular offense with which he stands charged. Each case must be tried on its own merits, and be determined by the circumstances connected thereto. 15 Ohio Jurisprudence (2d), 518, Section 349. Testimony of collateral facts tends to draw away the minds of the

jurors from the point in issue, and also tends to excite prejudice and mislead the jurors. 15 Ohio Jurisprudence (2d), 520, Section 350. Notwithstanding that the accused or a witness may be cross-examined with respect to his prior conviction of crime under Section 2945.42, Revised Code, inquiry with respect to prior arrest or conviction of a misdemeanor or municipal ordinance is improper and constitutes prejudicial error. *Kornreich* v. *Indus. Fire Ins. Co.*, 132 Ohio St., 78, 90, 5 N. E. (2d), 153; *State* v. *Hickman*, 102 Ohio App., 78, 141 N. E. (2d), 202; *City of Troy* v. *Cummins*, 107 Ohio App., 318, 159 N. E. (2d), 239; *State* v. *Rodriguez*, 110 Ohio App., 307; *Chambers* v. *Robert*, 110 Ohio App., 472, 166 N. E. (2d), 530. Contra: *State* v. *Carter*, 75 Ohio App., 545, 58 N. E. (2d), 794.

By way of further example of the possible prejudicial effect of admitting testimony on an extraneous matter, see the recent case of *Commonwealth* v. *Truitt* (1951), 369 Pa., 72, 85 A. (2d), 425, 30 A. L. R. (2d), 572, holding that the admission of evidence pertaining to communistic connections with the union to which the defendant belonged constituted prejudicial error requiring reversal.

Coming now to the specific question presented, whether the admission of testimony in the instant case constitutes error, decisions in other jurisdictions generally hold that since evidence of the result of a lie detector test is inadmissible in a criminal case, evidence of suspect's willingness or unwillingness to take such test is also inadmissible. *Commonwealth* v. *McKinley* (1956), 181 Pa. Super., 610, 123 A. (2d), 735; *Commonwealth* v. *Saunders* (1956), 386 P., 149, 125 A. (2d), 442; *McCain* v. *Sheridan* (1958), 160 Cal. App. (2d), 174, 324 P. (2d), 923. See other authorities, A. L. R. (2d), 1960 Supplement, 1998-1999, wherein prejudicial character of the error is cured by striking and instructions to disregard such testimony.

It is therefore concluded that the admission of the testimony in the instant case was erroneous, but does it affirmatively appear from the record that the accused was or may have been prejudiced as a result of the admission of such testimony. Section 2945.83, Revised Code.

In the instant case, evidence in support of the charge was primarily that of the testimony of the complaining witness,

an inmate of the receiving ward of the Toledo State Hospital, diagnosed as having an abnormally low I. Q. and a sociopathic personality disturbance, having some aspect of sexual disorder. However, in our opinion the court, after *voir dire* examination of physicians and the 17-year-old boy himself, properly determined the witness competent to testify. On the whole, he related a consistent story, although obviously embarrassed and reluctant to relate the sordid details. The complaining witness' story was refuted by the testimony of the accused and corroborated by his alibi witness.

The officer testified that the accused expressed willingness to take the lie detector test and to believe the finding of the lie detector test. A portion of this testimony on motion was stricken without admonishing the jury to disregard it. On cross-examination, the accused admitted that he had taken the test but did not know the result. In our opinion, the jury would gain the impression from this testimony that the accused had taken the test and failed to tell the truth. It is therefore concluded that the error in admitting such testimony was prejudicial. Other assignments of error are found not well made or nonprejudicial.

The judgment is reversed and cause remanded for a new trial.

*Judgment reversed.*

Smith and Deeds, JJ., concur.