The State of Ohio, Appellee, v. Hegel, Appellant.

[Cite as State v. Hegel, 9 Ohio App. 2d 12.]

(No. 2786—Decided March 27, 1964.)

*Mr. Paul R. Young,* prosecuting attorney, and *Mr. Julius Herchig,* for appellee.

*Messrs. Eaton & Ware,* for appellant.

Kerns, P. J.   The defendant, Eugene O. Hegel, appellant herein, was charged in the Court of Common Pleas of Montgomery County, Division of Domestic Relations, with acting in a manner tending to cause the delinquency of minor children "in that he did engage in indecent and immoral conduct with said minors." He entered a plea of "not guilty," was tried by jury, and found guilty of the charge. From the judgment and sentence of the trial court, the defendant has appealed to this court on questions of law.

Although the defendant challenges the judgment and sentence on numerous grounds, he appears to rely considerably upon the claim that the admission of testimony pertaining to a polygraph test was erroneous.

During the state's direct examination of Sergeant Cox of the Kettering Police Department, the following testimony was elicited:

"Q. Did Mr. Hegel say anything else relative to this after you said this to him about the lineup?   A. He asked how it could be avoided.

"Q. What did you say?   A. I advised him there was a possibility of the polygraph—the lie detector test.

"Mr. Eaton: I object.

"The Court: Overruled.

"Q. What did he say relative to that? A. He said he would have to refuse at this time because he had been advised on a previous occasion to advise with his attorney first."

Thereafter, during cross-examination of the defendant, the state asked the following questions:

"Q. Didn't you say, 'Yes, I have a ten year old daughter myself,' in the conference room? A. Not that I recall.

"Q. And that you did not want to put these girls through any ordeal and asked what else could be done? A. No sir.

"Q. Did he then advise you that you could submit to a lie detector test in the conference room? A. No sir.

"Q. What was your answer? He didn't even ask the question? A. No.

"Q. Didn't you say this, or didn't you refuse, stating to him that you had been advised by an attorney? A. I couldn't refuse. He didn't ask me."

Still later, during rebuttal, Sergeant Cox was again examined by the state, as follows:

"Q. Did he state in preface anything further about having a ten year old daughter? A. Yes, he did.

"Q. Did he ask you what could be done, or what else could be done to forego the identification? A. Yes, he did.

"Q. And what was your answer to that? A. The use of a lie detector or polygraph test.

"Q. And what did he say? A. He refused, advising that he had been advised to consult with his attorney on a previous occasion."

The defendant urges that the admission of this testimony was error, and the state's brief is noticeably devoid of any argument or authority to the contrary.

It is universally recognized that the results of lie detector tests are not admissible in evidence by either a defendant or the prosecution for the purpose of establishing the innocence or guilt of the accused. 23 A. L. R. 2d 1308. And since it is uniformly held that such a test is not judicially acceptable, it reasonably follows that neither a professed willingness nor a refusal to submit to such a test should be admitted. *State* v. *Smith*, 113 Ohio App. 461; *State* v. *Kolander*, 236 Minn. 209, 52 N. W. 2d 458; *Commonwealth* v. *McKinley*, 181 Pa. Sup. 610, 123 A. 2d 735; *Commonwealth* v. *Saunders*, 386 Pa. 149, 125 A.

2d 442. For other cases, see A. L. R. 2d, Later Case Service, 608. The reason for disallowing such evidence is discussed in the case of *State* v. *Mottram*, 158 Me. 325, 330, 184 A. 2d 225, where the court said:

"In addition to refusing to admit the result of a lie detector test, the courts have also denied admission in evidence of the refusal or willingness of a respondent to take the test. The underlying reason for this rule rests in the belief that the fact finder would be unable to assess the evidence without assuming a non-existent value for lie detector tests in general.

"The worth of evidence of refusal or willingness to take a lie detector test rests, in our opinion, upon a general acceptance of the worth of evidence of the result of such a test. The result does not have the accuracy entitling it to admission in evidence. It follows that a refusal or willingness to take a test of which the result would have been without value in evidence, likewise has no value for the fact finder. * * *

"* * *

"In our opinion, far reaching as the explanation might be, the jury in practice would give weight to the refusal to take the test in the belief that the test itself would have had value if taken. The inference would be quickly and erroneously drawn from refusal to consciousness of guilt to guilt."

Although the admission of testimony showing a refusal to submit to a lie detector test constitutes error, the more difficult question in the present case is whether it was prejudicial to the rights of the defendant. See Section 2945.83, Revised Code.

As heretofore noted, such testimony entered the present record on three different occasions during the course of the trial. It was first admitted over the objection of the defendant, and was twice thereafter injected into the proceeding by the prosecution. At no point was the jury admonished to disregard it.

The effect of inadmissible testimony upon the final outcome of any case cannot, of course, be guaged with mathematical certainty, but the manifest weight of the type of testimony erroneously admitted in the present case cannot conscientiously be ignored in determining whether the defendant was prejudiced by its admission.

As stated in the case of *State* v. *Kolander, supra*:

"* * * The impact upon the minds of the jurors of a refusal to submit to something which they might well assume would effectively determine guilt or innocence, under these conditions, might well be more devasting than a disclosure of the results of such test, if given after a proper foundation had been laid showing how the apparatus functioned."

In the present case, we are of the opinion that the prosecution's purposeful introduction of testimony pertaining to the defendant's refusal to submit to a lie detector test, though possibly prompted by righteous zeal, did, nevertheless, unduly invade the right of the defendant to a fair trial. Such testimony, in and of itself, was not incapable of completely destroying the presumption of innocence to which the defendant was entitled. Although the loathsome nature of the alleged crime naturally arouses indignation, the state nevertheless was required to rely upon competent evidence in the prosecution of the accused, and its failure to do so prevented the defendant from having a fair trial. This assignment of error will therefore be sustained.

Our examination of the record discloses no other prejudicial error, but for the reason stated, the judgment must be reversed and the cause remanded for a new trial.

*Judgment reversed.*

SHERER and CRAWFORD, JJ., concur.