The STATE of Ohio, Appellee,

v.

KNIEP, Appellant.

[Cite as *State v. Kniep* (1993), 87 Ohio App.3d 681.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005427.

Decided May 12, 1993.

*Gregory A. White,* Lorain County Prosecuting Attorney, for appellee.

*Jerry Milano,* for appellant.

---

Reece, Judge.

Defendant-appellant, Troy Kniep, was indicted on one count of felonious assault, R.C. 2903.11(A)(1), and two counts of child endangering in violation of R.C. 2919.22(A) and (B)(3). All three charges carried specifications that Kniep caused physical harm to his victim.

Kniep is the putative father of the victim, Alyssa Kniep, born June 6, 1991. On November 12, 1991, Alyssa's mother, Erin Cameron, left the child in Kniep's care. Upon returning home she noticed a scratch and severe bruise on the child's inner right thigh. Erin took the child to Dr. Delbert Mason, the family physician. Because of the location and severity of the injury, Dr. Mason was concerned that the child had been abused. Alyssa was then taken to the hospital for a more thorough examination. The x-rays revealed not only a fracture to the right thigh as Dr. Mason had suspected, but also fractures of various ages to four ribs, the right tibia and the left thigh. At trial, Dr. Mason opined that such injuries are highly uncommon in a child not yet able to walk or crawl, and consistent with child abuse. Thereafter, the child was placed in the protective custody of the Lorain County Children Services Bureau ("CSB").

Kniep was subpoenaed by the grand jury to appear at the courthouse on December 23, 1991. On that day Sharon Longhurst, a social worker with CSB, was present at the courthouse with Alyssa. When Kniep arrived, Longhurst handed him Alyssa, whereupon the baby began to cry and reach for Longhurst. A videotape of this incident was made by the prosecution and introduced at trial over Kniep's objection.

Following a two-day jury trial Kniep was convicted of the two counts of child endangering and acquitted on the felonious assault charge. He appeals his convictions raising three assignments of error.

### Assignment of Error No. I

"The prosecutor's misconduct in using a false subpoena to trick the defendant into presenting himself at court so that incriminating video footage could be taken of him with his daughter resulted in an unfair trial and a miscarriage of justice."

Kniep alleges the prosecution improperly used the grand jury process (*i.e.*, a grand jury subpoena) for the sole purpose of obtaining incriminating evidence about a crime for which he had already been indicted. He brings to our attention numerous cases holding that such post-indictment use of the grand jury process constitutes misconduct on the part of the prosecution. See, for example, *Payden v. United States* (C.A.2, 1985), 767 F.2d 26, 30, *United States v. Doss* (C.A.6, 1977), 563 F.2d 265, 277.

In reviewing the record, the indictment of Kniep was filed by the grand jury on April 7, 1992. Contrary to Kniep's assertion, the subpoena was not issued after he had already been indicted. Therefore, we find the case law and argument advanced by Kniep to be inapposite to the facts of the present case.

Accordingly, Kniep's first assignment of error is overruled.

### Assignment of Error No. II

"The trial court committed reversible error by improperly admitting into evidence a videotape of the defendant and his daughter, which showed the defendant's daughter crying while being held in the defendant's arms."

At trial, Kniep objected to the state's use of the videotape showing his daughter crying while he was holding her. He argues that the videotape depicting the reaction of his daughter constitutes hearsay evidence with no applicable exception. We disagree.

"Hearsay" is defined in Evid.R. 801(C) as:

"[A] *statement,* other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." (Emphasis added.)

A "statement" is further defined by Evid.R. 801(A) as:

"(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion."

■ Kniep argues that the purpose in introducing the videotape was to infer from Alyssa's conduct that he had abused the child. Although the existence of certain conditions may be inferred from conduct, this does not mean that all conduct is hearsay evidence. Nonverbal conduct is hearsay only when it is intended by the actor to be an assertion of his belief. Thus, it has been recognized that only that conduct apparently intended by the actor to convey his thoughts to another, comes under the ban of the hearsay rule. The rationale behind this rule is that it is unlikely a person would attempt any purposeful deception in the absence of any intent to communicate. See, generally, McCormick, Evidence (3 Ed.Cleary Ed.1984) 738–739, Section 250; 11 Moore, Federal Practice (1989), Paragraph 801.01[3–1], at VIII–19.

We acknowledge that the distinction between communicative and noncommunicative conduct is at times unclear. In the present case Alyssa was six months old at the time the videotape was made. Given her age and concomitant mental abilities, Alyssa's crying cannot be considered conduct intended by her to be an assertion of her belief.

■ Kniep next asserts that even if admissible, the videotape was unduly prejudicial in comparison to its probative value. Evid.R. 403(A). Before introducing the videotape the prosecution presented the testimony of Sharon Longhurst, the CSB worker assigned to the case. After Alyssa was placed in the protective custody of CSB, Longhurst was present at each of the scheduled visits between Kniep and his daughter. Without objection, Longhurst testified that at each of these visits Alyssa would begin to cry any time she was handled by Kniep. The events depicted on the videotape are merely cumulative to this testimony.

■ A trial court enjoys broad discretion in the admission or exclusion of evidence and will not be reversed absent a clear abuse which had materially prejudiced a defendant. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281; *Humphrey v. State* (1984), 14 Ohio App.3d 15, 18, 14 OBR 18, 21, 469 N.E.2d 981, 985. We do not find abuse in the trial court's admission of the videotape.

Accordingly, Kniep's second assignment of error is overruled.

### Assignment of Error No. III

"The trial court committed prejudicial error in refusing to give a curative jury instruction regarding a witness' testimony that the defendant failed to take a polygraph examination regarding his daughter's injuries."

In the cross-examination of Sharon Longhurst the following questions were asked by Kniep's attorney and answers given:

"Question [By Kniep's Attorney]:

"Would it be fair to say by the first time you met [defendant] Troy Kniep on the first visit, due to the facts in front of you and the things that you received in this case, that you were already firmly convinced of his guilt in this matter?

"Answer [By Sharon Longhurst]:

"I can't say that, no.

"Question: Were you convinced?

"Answer: I was a little concerned because he didn't contact the agency, because he didn't contact us. I was concerned about *the mother had taken a voluntary polygraph test and he didn't.*" (Emphasis added.)

Kniep objected to the response to his question and requested the court to strike the answer. The court refused to give any curative instruction.

Ordinarily, the refusal of a defendant to submit to a polygraph test is not admissible by the prosecution as evidence of a defendant's guilt. *State v. Hegel* (1964), 9 Ohio App.2d 12, 38 O.O.2d 25, 222 N.E.2d 666. However, in this case the testimony regarding Kniep's refusal to take a lie detector test was elicited by his own counsel. Under these circumstances the rule of "invited error" prohibits a party who induced error at trial from asserting such error on appeal. This rule has been readily applied by the courts to testimony concerning polygraph examinations. See *State v. Woodruff* (1983), 10 Ohio App.3d 326, 327, 10 OBR 532, 533, 462 N.E.2d 457, 458; *State v. Hill* (1987), 37 Ohio App.3d 72, 75–76, 523 N.E.2d 894, 898.

Finally, we note that Longhurst's testimony that Kniep refused to take a polygraph examination was offered not to infer his guilt, but to prove Longhurst's state of mind. It was therefore relevant in demonstrating the basis of Longhurst's feelings and attitude toward Kniep. In *Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 564 N.E.2d 440, syllabus, rehearing denied (1990), 57 Ohio St.3d 611, 566 N.E.2d 1232, the Ohio Supreme Court noted that the results of a polygraph test, while ordinarily not admissible to prove either guilt or innocence, may be admitted to prove the state of mind of a third person aware of the results.

Accordingly, Kniep's third assignment of error is overruled.

Having overruled each assigned error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and DICKINSON, J., concur.