OPINION
{¶ 1} Appellant Donald Searles appeals the verdict rendered in the Morgan County Court of Common Pleas. Appellant challenges the admission of certain evidence, at his trial, and the trial court's denial of his motion for acquittal. The following facts give rise to this appeal.
 {¶ 2} Appellant is the stepfather of the victim, April Walker. Appellant met April's biological father, Joseph Walker, while he was an inmate at the Southeastern Correctional Institute. Joseph Walker was employed, in the maintenance shop, and supervised inmates working in that area. Joseph Walker became friends with appellant.
 {¶ 3} Following his release from prison, appellant continued to maintain a friendship with Joseph Walker and would regularly visit the Walkers at their residence in Perry County. During this time period, Joseph Walker's marital relationship with his wife, Stephanie Walker, deteriorated and ultimately ended in divorce. Thereafter, appellant became romantically involved with Stephanie Walker and the two were eventually married.
 {¶ 4} After Stephanie Walker's marriage to appellant, April Walker moved in with her mother and appellant. Appellant began sexually abusing April on numerous occasions. Appellant forced April to engage in sexual intercourse, fellatio and cunnilingus. Appellant also fondled her breasts, buttocks, thighs and vagina in order to sexually stimulate himself and April. This abuse occurred while April's mother was not present at the residence.
 {¶ 5} April did not immediately report the abuse because she was afraid her father would be so enraged that he may attempt to kill appellant. The abuse was not discovered until April told a friend who subsequently informed April's stepmother. Thereafter, the Morgan County Department of Jobs and Family Services, Children's Services Division, and the Morgan County Sheriff's Department began a joint investigation. The results of the investigation were presented to the Morgan County Grand Jury.
 {¶ 6} On November 2, 2001, the grand jury indicted appellant for four counts of rape, with a sexually violent predator specification; sexual battery, with a sexually violent predator specification; having unlawful sexual conduct with a minor, with a sexually violent predator and prior conviction specification; gross sexual imposition, with a sexually violent predator specification; and having weapons under disability. Appellant initially pled not guilty to the charges contained in the indictment.
 {¶ 7} However, on December 12, 2001, appellant entered a guilty plea to the charge of having weapons under disability. On December 18, 2001, a jury trial commenced on the remaining counts contained in the indictment. Following deliberations, the jury found appellant guilty of the remaining ten counts. Appellant waived his right to a jury trial as to the violent sexual predator specifications contained in the indictment and those matters were tried to the court. The trial court found appellant guilty of all specification counts charged in the indictment and sentenced appellant accordingly on January 29, 2002.
 {¶ 8} Thereafter, appellant filed motions for acquittal and for a new trial. The trial court denied both motions. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 9} "I. THE COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT/APPELLANT WHEN IT ADMITTED AT TRIAL THE TESTIMONY RELATED TO THE SUBMISSION OF THE VICTIM TO A POLYGRAPH TEST.
 {¶ 10} "II. THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING DR. J. MICHAEL HARDING AND KAREN TASKEY TO TESTIFY CONCERNING THE VICTIM'S CHARACTER, CREDIBILITY AND VERACITY, PRIOR TO HER TESTIMONY.
 {¶ 11} "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING THE APPELLANT'S MOTION FOR ACQUITTAL CONCERNING THE ELEMENT OF OPERATION. CRIMINAL RULE 29.
 {¶ 12} "IV. THE COURT COMMITTED PLAIN ERROR PREJUDICIAL TO THE DEFENDANT BY PERMITTING OTHER ACTS EVIDENCE TO BE PRESENTED TO THE JURY OUTSIDE THE SCOPE OF OHIO EVIDENCE RULE 404(B) AND OHIO REVISED CODE SECTION 2907.02(D) AND 2945.59."
 I {¶ 13} Appellant maintains, in his First Assignment of Error, the trial court erred when it admitted Deputy James Fisher's testimony that April Walker took a polygraph examination. We agree.
 {¶ 14} The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. It is pursuant to this standard that we review appellant's First Assignment of Error.
 {¶ 15} The record establishes that during the course of the Morgan County Sheriff's Department's investigation of April's allegations against appellant, Deputy Fisher arranged to have April take a polygraph examination to test the truthfulness of her allegations. BCII Special Agent, James McCullough, administered the polygraph examination. The results of the polygraph indicated April was truthful regarding the allegations she made against appellant.
 {¶ 16} At trial, prior to the state's conclusion of its direct examination of Deputy Fisher, the following bench conference occurred:
 {¶ 17} "PROSECUTOR: Your Honor, could we approach?
 {¶ 18} "COURT: Yes.
 {¶ 19} "PROSECUTOR: Just so, I mean, Jimmy is telling what he did on the investigation he also set up a polygraph for her which she took and we don't intend to talk about the results. Can we . . .
 {¶ 20} "COURT: It's not admissible.
 {¶ 21} "PROSECUTOR: No, it isn't admissible but the fact they did that as part of their investigative tools, not the results of it. He needs to be complete.
 {¶ 22} "DEFENSE COUNSEL: The assumption on the jury is going to be . . .
 {¶ 23} "PROSECUTOR: Well, he'll tell them not to assume anything when instructed.
 {¶ 24} "DEFENSE COUNSEL: If it's already . . .
 {¶ 25} "PROSECUTOR: Well (sic) take whatever the Court says on it but.
 {¶ 26} "COURT: A polygraph is not admissible. The results of a polygraph is (sic) not admissible. If he tells them.
"* * *
 {¶ 27} "COURT: The results of the polygraph itself are not admissible unless there (sic) stipulated to by both sides and I assume the defense is not stipulating, is that correct? All right, so the defense is not going to stipulate. So, since the results are not admissible it's going to confuse the jury if you tell them that there was a polygraph done as part of the investigation and you don't tell them what the results are. So, I would, I would suggest to you that you don't put the polygraph evidence in as part of the investigation. Tr. Vol. III at 18-19.
 {¶ 28} However, during cross-examination, defense counsel elicited the following testimony from Deputy Fisher, that the state argues eventually led to his statement, to the jury, that April Walker took a polygraph examination. This testimony is as follows:
 {¶ 29} "DEFENSE COUNSEL: Deputy Fisher, did you obtain any physical evidence that April Walker had been subjected to sexual intercourse by Donald Searles?
 {¶ 30} "WITNESS: No, sir I did not.
 {¶ 31} "DEFENSE COUNSEL: Did you obtain any physical evidence that April Walker had been subjected to oral sexual abuse by Donald Searles?
 {¶ 32} "WITNESS: No sir, I did not.
 {¶ 33} "DEFENSE COUNSEL: Deputy Fisher, did you obtain any physical evidence that April Walker had been subjected to inappropriate touching by Donald Searles?
 {¶ 34} "WITNESS: No sir, I did not.
 {¶ 35} "DEFENSE COUNSEL: You simply believed the story of April Walker and her two friends didn't you?
 {¶ 36} "WITNESS: Yes sir, I do.
 {¶ 37} "DEFENSE COUNSEL: And that is the only evidence you have for any of these allegations, isn't it?
 {¶ 38} "WITNESS: Yes sir. Tr. Vol. III at 20-21.
 {¶ 39} Following this line of questioning, the state requested a bench conference and the following discussion occurred:
 {¶ 40} "PROSECUTOR At this point Your Honor I would again like to ask that question, you know, because he just said did you do anything else to check the veracity of these people, you know, or you just simply believed them, and I think he ought to be able to say.
 {¶ 41} "COURT: Well, at this point I think he's opened it up by asking these questions. So, your (sic) of course running the risk of the jury not knowing what the answer is because I am not going to let you put into evidence what the answer is not admissible. But the fact that he did do a polygraph test is, I think since he's opened it up it's fine. Go ahead. Tr. Vol. III at 21-22.
 {¶ 42} Following the trial court's decision, the state proceeded with the following questions of Deputy Fisher:
 {¶ 43} "PROSECUTOR: Thank you Your Honor. Deputy Fisher, Mr. Miller (defense counsel) ask (sic) you a question wherein he said, `you simply believe the story of April Walker and her friends.' And you answered that correct.
 {¶ 44} "WITNESS: Yes.
 {¶ 45} "PROSECUTOR: And then he said, or asked you, `and that is the only evidence you had as to any of these allegation.' I believe you answered in the affirmative.
 {¶ 46} "WITNESS: Correct.
 {¶ 47} "PROSECUTOR: Did you in fact do anything else with April Walker during your investigation?
 {¶ 48} "WITNESS: Yes sir I did. I had a polygraph . . .
 {¶ 49} "DEFENSE COUNSEL: Objection Your Honor on the basis of 403.
 {¶ 50} "COURT: All right. The Court's going to overrule that objection as to whether a test was run or not. Proceed.
 {¶ 51} "PROSECUTOR: Please answer the question. Did you in fact do anything else or have April Walker do anything else during your investigation?
 {¶ 52} "WITNESS: Yes sir. I ask (sic) April Walker to submit to a polygraph test and she did.
 {¶ 53} "PROSECUTOR: And even after that you continued your investigation?
 {¶ 54} "WITNESS: Yes sir, I did. Tr. Vol. III at 26-27.
 {¶ 55} Appellant sets forth several arguments in support of this assignment of error. First, appellant contends the testimony made April Walker appear credible prior to her testifying in the case. Appellant also claims the testimony should have been excluded under Evid.R. 402 because it was not relevant. Finally, appellant maintains even if we were to find this testimony relevant under Evid.R. 402, it still is not admissible under Evid.R. 403(A) because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.
 {¶ 56} The state responds that defense counsel opened the door to the introduction of this evidence by challenging the integrity of the investigation. The state further maintains that even if we find error, it was harmless error due to the other evidence introduced at trial concerning appellant's guilt or innocence. In support of this argument, the state cites our decision in State v. McAfee (Dec. 26, 1991), Guernsey App. No. CA-91-20.
 {¶ 57} The facts of McAfee involve the sexual abuse of a baby. Prior to the commencement of trial, the trial court ruled, in response to defendant's motion in limine, that the state should not mention that defendant took a polygraph examination and the state should not ask whether normal procedures were followed, including the giving of a polygraph test. Id. at 1. At trial, part of the defense's strategy was to question the thoroughness of the police investigation. Id. at 2. During cross-examination of a detective that investigated the case, counsel for defendant asked:
 {¶ 58} "Q. Now did you attempt, you didn't attempt to collect any evidence against the baby's mother, Martha McAfee, did you?
 {¶ 59} "A. Yes, Sir.
 {¶ 60} "Q. And, what was that?
 {¶ 61} "A. She was interviewed, and she was asked if she would be willing to take a polygraph test." Id. at 2.
 {¶ 62} Defense counsel did not move to strike the reference made to the polygraph examination. Id. Thereafter, the prosecutor asked the following questions of the detective:
 {¶ 63} "Q. Did you receive any leads since November 21 up until today's date regarding the involvement of Martha McAfee in this matter?
 {¶ 64} "A. Just that she was possibly a suspect from the beginning.
 {¶ 65} "Q. And what did you do in respect to her being a possible suspect Detective?
 {¶ 66} "A. A statement was taken from her one thing and she was asked to take a polygraph test which she agreed to.
 {¶ 67} "Q. Now, Detective, based upon the leads which you followed, the results of this polygraph, is there any reason to suspect that the mother is a suspect in this matter?" Id.
 {¶ 68} At that point, defense counsel objected. Id. The trial court sustained the objection, in part, and permitted the state to ask if there was any basis to determine that the mother was a suspect in the case or if there was any results of any evidence. Id. The trial court did not allow anymore testimony regarding the polygraph of the mother. Id. Following this ruling, the state asked the following question of the detective:
 {¶ 69} "Q. Detective, is there any basis whatsoever any results from any evidence whatsoever to determine that the mother, Martha McAfee, was a suspect in the crime in this matter?
 {¶ 70} "A. No, Sir. At this time we felt the mother is no longer a suspect." Id.
 {¶ 71} On appeal to this court, we concluded the above exchanges informed the jury that mother had, in fact, taken a polygraph examination and presumably was telling the truth. Id. at 3. In analyzing the exchanges between the parties, the court found it necessary to review its previous decision in State v. Rohl (Feb. 21, 1990), Guernsey App. No. 89-CA-21. Our decision, in Rohl, addressed the reference to a polygraph examination taken by a thirteen-year-old alleged sexual assault victim.
 {¶ 72} On appeal, defendant challenged the trial court's decision to deny a mistrial when the first two prosecution witnesses established, through their testimony, that the victim had taken a polygraph examination. Id. at 1. The first admission occurred when, in response to a general question about her "dealings" with the alleged victim, a caseworker stated that, "I think I really — well, I took her out up to the Bureau of Criminal Investigation that morning before we got custody of her so they could do it then, a polygraph test." Id. Defense counsel objected to this statement and the trial court sustained the objection. Id.
 {¶ 73} The second admission occurred during the testimony of the investigating officer from the sheriff's department. Id. at 2. In response to procedures followed in these types of cases, the investigating officer stated, "The second thing we do is for any girls [sic] that is 13 years or older we request them after they give us a statement we have them take a polygraph provided —." Id. Defense counsel objected to this statement and moved for a mistrial. Id. The trial court denied defense counsel's motion. Id.
 {¶ 74} Subsequently, the trial resumed and the state asked the following question of the investigating officer:
 {¶ 75} "Q. Did in your analysis of your investigation did you feel you failed to do anything that would normally be done?
 {¶ 76} "A. No, sir." Id.
 {¶ 77} We concluded, on appeal, the trial court should have granted defense counsel's motion for a mistrial. In reaching this conclusion, we stated:
 {¶ 78} "In our opinion, the fact that the accused was on trial because of the accusation of the complaining witness, coupled with the testimony of these two witnesses, that the normal procedure was to give complaining witnesses in such cases a polygraph test, unmistakably informs the jury that she had taken the test and that the test showed she was telling the truth.
 {¶ 79} "To make matters worse, the last question asked makes it crystal clear (in case anyone had missed the prior inference) that the deputy sheriff did not fail to do anything in this case that was normally done. `Normally' prosecutions are not undertaken where the complaining witness fails the test." Id.
 {¶ 80} The McAfee court found the Rohl decision distinguishable on several grounds. First, the McAfee court found, in Rohl, the reference was to a polygraph of the alleged victim instead of a possible suspect other than the defendant. McAfee at 3. Second, defense counsel asked the question that prompted the response regarding the mother's polygraph examination. Id. Finally, unlike in Rohl, defendant never asked for a mistrial. Id. Thus, having found the Rohl decision distinguishable, the court determined the trial court did not err when it failed to declare a mistrial. Id. at 4.
 {¶ 81} Although the state cites our decision, in McAfee, in support its argument, we find the facts presented, in the case sub judice, more closely resemble those considered in Rohl. The matter currently under consideration concerns a polygraph examination administered to the complaining witness. Further, it was the state that elicited testimony that the complaining witness had taken a polygraph examination. Although defense counsel, in the case sub judice, did not ask the trial court for a mistrial, he did object to the question.
 {¶ 82} Thus, we conclude the questions asked by the state, to Deputy Fisher, clearly established that the victim took a polygraph examination and further implied that she passed the examination since he continued with his investigation. In State v. Rowe (1990),68 Ohio App.3d 595, the Tenth District Court of Appeals noted that some courts have found the mere mention that a witness or defendant has taken a polygraph examination has been held to be prejudicial error. Id. at 611, citing State v. Smith (1960) 113 Ohio App. 461; People v. York
(1975), 29 Ill. App.3d 113; State v. Harris (Oct. 3, 1984), Hamilton App. No. C-830927.
 {¶ 83} In addressing this prejudicial effect of the admission of testimony regarding a polygraph examination, the court, in Rowe, stated as follows:
 {¶ 84} "In determining whether a defendant was prejudiced by the admission of testimony regarding a polygraph test, `[t]he effect of inadmissible testimony upon the final outcome of any case cannot, of course, be gauged with mathematical certainty, but the manifest weight of the type of testimony erroneously admitted in the present case cannot conscientiously be ignored * * *." Id., citing State v. Hegel (1964),9 Ohio App.2d 12, 14.
 {¶ 85} In State v. Rowe (1990), 68 Ohio App.3d 595, the court set forth the following factors to determine whether a reversal is warranted where testimony is presented regarding a polygraph examination:
 {¶ 86} "* * * (1) [W]hether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster a witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact a test had been conducted." Id. at 611, citing People v. Rocha (Mich.App. 1981),110 Mich. App. 1, 9.
 {¶ 87} The application of these factors, to the case sub judice, also support our conclusion that a reversal is warranted. First, defense counsel immediately objected, however, counsel did not request a cautionary instruction. Second, the reference to the victim's polygraph examination was not inadvertent as the trial court conducted a bench conference prior to permitting the state to ask the question of Deputy Fisher. Third, there were not repeated references. Fourth, we find the reference was an attempt to bolster both Deputy Fisher's credibility and the victim's credibility as it established the reason for the continued investigation and implied that the victim's allegations were true. Finally, although the results of the polygraph examination were not admitted, Deputy Fisher's response that as a result of the polygraph examination he continued his investigation, clearly implies the victim passed. These factors indicate a reversal is warranted.
 {¶ 88} The trial court abused its discretion when it permitted Deputy Fisher to testify regarding the administration of the polygraph examination to the victim.
 {¶ 89} Appellant's First Assignment of Error is sustained. We will not address appellant's Second, Third or Fourth Assignments of Error as they are moot based upon our disposition of appellant's First Assignment of Error.
 {¶ 90} For the foregoing reasons, the judgment of the Court of Common Pleas, Morgan County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.
By: Wise, J., Gwin, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Morgan County, Ohio, is reversed and remanded for further proceedings consistent with this opinion.
Costs assessed to Appellee State of Ohio.