[Cite as *State v. Key*, 2017-Ohio-4098.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee          :    C.A. CASE NO.   27199
                                       :
v.                                     :    T.C. NO. 15-CR-3377
                                       :
DARIUS D.D. KEY                        :    (Criminal Appeal from
                                       :     Common Pleas Court)
    Defendant-Appellant         :
                                       :
          . . . . . . . . . .

**O P I N I O N**

Rendered on the ____2nd____ day of _____June_____, 2017.

          . . . . . . . . . .

MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

STEPHEN P. HARDWICK, Atty. Reg. No. 0062932, Assistant Public Defender, 250 E. Broad Street, Suite 1400, Columbus, Ohio 43215
      Attorney for Defendant-Appellant

          . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Darius Key, filed July 25, 2016. Key filed a delayed appeal from his June 8, 2016 Judgment Entry of Conviction, following a jury trial, on one count of rape (victim under ten), in violation of R.C. 2907.02(A)(1)(B), a felony of the first degree. Key was sentenced to 15 years to

life.   At issue herein is the trial court's refusal to allow Key to testify that he volunteered to take a polygraph examination.   We hereby affirm the judgment of the trial court.

{¶ 2}   Key was indicted on November 12, 2015, and a not guilty plea was entered on November 18, 2015.   On December 21, 2015, Key filed a "Motion for Funding for Expert Witnesses," which provides in part that he "is also asking the Court for funding for an experienced polygraph expert to administer a polygraph examination to determine the truthfulness [of his] assertion of innocence.   Mr. [Key] has been warned that he will be bound by the results of the polygraph examination, but is nevertheless eager to clear his name by submitting to such testing."   Key directed the court's attention to *State v. Sharma*, 143 Ohio Misc.2d 27, 2007-Ohio-5404, 875 N.E.2d 1002 (C.P.), wherein the Summit County common pleas court granted Sharma's request for an evidentiary hearing to qualify his polygraph examiners as experts and admitted the nonstipulated results of the testing at trial.   Key argued as follows:

In Mr. [Key's] case, the Court may wish to conduct an evidentiary hearing to evaluate the reliability of the polygraph evidence, to allow the polygraphist to testify as to the general acceptance of polygraph use and methodology, and further, to acknowledge that the defendant was not being deceptive in his answers to questions pertaining to the charges against him. *Sharma, supra.*   This may help the charges against Mr. [Key] to be fairly evaluated and dealt with without the necessity of trial.

In view of the potentially substantial sentence of incarceration Mr. [Key] is facing, as well as other collateral consequences, particularly as they relate to sexual predator standing and reporting, the Defense urges the

Court to permit Mr. [Key] to undergo a polygraph examination by a competent examiner, to hold any pretrial hearing that the Court finds to be appropriate, and to find the results admissible.

{¶ 3} The trial court overruled Key's request on December 30, 2015, after a hearing. At the hearing, the State noted that it did not intend to stipulate to the admissibility of the polygraph testing, and the court indicated that it "has no authority to order a polygraph examination, or to allow its admissibility, unless that State stipulated to such."

{¶ 4} At trial, in the course of questioning about DNA samples that Key provided in the course of the investigation of his offense, the following exchange occurred:

Q. And you voluntarily did this, right?

A. Yes, sir.

Q. Okay.

A. I took one Q-tip and swabbed my left cheek, and I took another one is one of my right [sic]. And she inserted them into a little package and let me see that she inserted them. And I think I initialed them, and she sealed them up.

Q. Okay.

A. And after that, I was questioned again by the other detective, basically, the same questions. They may have been a different form, but the same questions. And then they asked me would I agree to a polygraph test, I told them yes, but - -

MS. CONNELLY: Judge.

BY MR. STENSON:

Q.   All right.   Stop again.

THE COURT:   That object [sic] is sustained.

MR. STENSON:   Yeah.   I - -

THE COURT:   The remark concerning a polygraph test is stricken.

MR STENSON:   Correct.   It's - -

THE COURT:   You're to give it no consideration.

{¶ 5} Directing our attention to the above exchange, Key asserts the following assignment of error:

THE TRIAL COURT ERRED BY PREVENTING MR. KEY FROM TESTIFYING THAT HE OFFERED TO TAKE A POLYGRAPH EXAMINATION.

{¶ 6} Key argues that "several jurisdictions have expressly permitted the introduction of offers to take a polygraph examination."   According to Key, the "reason polygraph offers are different from polygraph results is that polygraph examinations are unreliable tests that the public often incorrectly views as reliable."   He argues that the "evidentiary value of an *offer* to take a polygraph examination is only as strong as the declarant's *belief* in the reliability of the test."   Key asserts that jurors "may not be able to assess the scientific reliability of a polygraph examination results, but jurors can assess how a witness's *perception* of the reliability affects the credibility of his statements, and that is all that would have been at issue in this case because credibility was the central issue."   Finally, Key argues that "[b]ecause the evidentiary value of an offer to take a polygraph does not depend on whether a polygraph is scientifically valid, the evidence

was more probative than prejudicial."

{¶ 7} The State responds that this "Court is in good company in disallowing the use of a defendant's offer to take a polygraph as evidence of consciousness of innocence. The Court should not accept Key's invitation to adhere to the minority view." The State further asserts that "Key took the stand in his own defense and, in addition to his attempt to present his willingness to take a polygraph, adamantly denied that he raped [the victim.]" According to the State, "[m]oreover, [the victim's] family members related how Key denied the assault at the time of the incident, and the detective who interviewed Key noted that he denied the allegations during his interview. With this in mind, any probative value derived from Key's bare willingness to submit to a polygraph was negligible." The State asserts that given "the low probative value of Key's self-serving statement regarding a potential polygraph test and the high risk that such a statement would needlessly confuse the issues before the jury, the trial court struck the proper balance in excluding the evidence." Finally, the State asserts that since "any error committed by the trial court did not affect Key's substantial rights, the error would have been harmless, and Key's argument must be rejected for this final reason."

{¶ 8} " 'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987)." *State v. Williams,* 2d Dist. Montgomery No. 26369, 2016-Ohio-322, ¶ 17. "A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable. *State v. Renner,* 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 24*." Id.* "The Supreme Court of Ohio has defined 'abuse of discretion' as an 'unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that

no conscientious judge could honestly have taken.' *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67." *Id.*

{¶ 9} In *State v. Russell*, 2d Dist. Montgomery No. 21458, 2008-Ohio-774, this Court held that it was error for the State to elicit testimony from its witness that she had agreed to submit to a polygraph examination, and that her plea agreement was contingent upon her passing the test, since "[b]y clear implication, the prosecutor in this case informed the jury that she was vouching for Hargrove's credibility because she wouldn't have put Hargrove on the witness stand if Hargrove hadn't taken, and passed, the polygraph examination." *Id.*, ¶ 118. This Court noted as follows:

As a general rule, results of polygraph tests are not admissible to prove the guilt or innocence of the accused because such tests have not been recognized by the scientific community as being a reliable method for determining the veracity of the examinee. *State v. Rowe* (1990), 68 Ohio App.3d 595, 609, 589 N.E.2d 394; *State v. Hegel* (1964), 9 Ohio App.2d 12, 13, 222 N.E.2d 666. Pursuant to this general rule, some courts have also held that, in addition to the results of a polygraph test, testimony expressing either the willingness or the refusal to submit to a polygraph examination should not be admitted in evidence. *Hegel,* 9 Ohio App.2d at 13, 222 N.E.2d 666; *State v. Smith* (1960), 113 Ohio App. 461, 463–65, 178 N.E.2d 605. However, polygraph test results may be admissible for the purposes of corroboration or impeachment, providing that the conditions set forth in *State v. Souel* (1978), 53 Ohio St.2d 123, 132, 372 N.E.2d 1318, are strictly followed. See *Rowe,* 68 Ohio App.3d at 609–10, 589 N.E.2d

394; *State v. Lascola* (1988), 61 Ohio App.3d 228, 234–36, 572 N.E.2d 717.

* * *

Initially, it should be noted that the State argues that we have held in a number of cases that it is permissible for the prosecution to ask one of its witnesses whether he or she agreed to submit to a polygraph examination as part of a negotiated plea deal, citing: *State v. Schlosser* (May 24, 1996), Montgomery App. No. 14976, 14968; *State v. Ballard* (Nov. 22, 1996), Montgomery App. No. 15410; *State v. Perry* (Nov. 25, 1998), Miami App. No. 97CA61, 98CA5; and *State v. Scott* (August 4, 2006), Montgomery App. No. 21260, 2006–Ohio–4016.

*Id.*, ¶ 87, 107.

{¶ 10} In *Schlosser*, 1996 WL 280038, *15 (May 24, 1996), this Court noted that "[w]e see no abuse of discretion on the part of the trial court in admitting evidence which reflected a witness' mere willingness to take [a polygraph] examination." As this Court noted in *Scott*, ¶ 11-12*:*

In *Ballard*, we held that the trial court did not err in denying a mistrial where a prosecution witness who was a co-defendant testified that his plea agreement required him to take a polygraph test if necessary. Likewise, we held in *Perry* that the trial court did not err in denying a mistrial where a prosecution witness testified that the defendant had asked to take a polygraph test. In both cases, we noted the existence of conflicting case law as to whether evidence of a willingness or refusal to submit to a polygraph test is admissible. We also expressed our view that a trial

court's admission of evidence about a witness' willingness to take a polygraph test was permissible and did not constitute an abuse of discretion.

It does not follow, however, that the trial court was required to admit evidence of Scott's willingness to take a polygraph test merely because the admission of such evidence may not constitute an abuse of discretion. To the contrary, a trial court also has the discretion to deny the admission of evidence concerning the willingness to take a polygraph test. As we recognized in *Perry*, the admission of such evidence necessarily invites a jury to speculate about whether a test was taken and what the results were. Such issues are "too remote from competent evidence to reasonably and fairly be probative of guilt or innocence." *Perry*, supra, at *7.

{¶ 11} After reviewing the authorities cited by the State in *Russell*, this Court noted as follows: "We conclude that we were wrong in holding that a witness's willingness to take a polygraph examination may properly be admitted in evidence over objection. In reaching this conclusion, the members of this appellate panel are unanimous." *Id.*, ¶ 114. Finally, this court noted that to "the extent that our prior jurisprudence is inconsistent with this conclusion, we disapprove of that jurisprudence, and hereby signal our unwillingness to follow it in future cases." *Id.*, ¶ 119.

{¶ 12} Based upon the foregoing analysis, we conclude that Key's assigned error lacks merit. In other words, the trial court did not err in refusing to allow Key to testify that he volunteered to take a polygraph test. Key's assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.

Copies mailed to:

Michael J. Scarpelli
Stephen P. Hardwick
Hon. Steven K. Dankof