ANITA LASTER MAYS, J.:
{¶ 1} After reconsideration, the opinion as announced by this court on December 7, 2017, State v. Carter , 8th Dist. Cuyahoga No. 104874, 2017-Ohio-8864, 2017 WL 6055538, is hereby vacated and substituted with this opinion.
{¶ 2} Defendant-appellant, Demetrius H. Carter ("Carter"), appeals his guilty verdict and sentence, and ask this court to reverse his conviction and remand to the trial court for a new trial. We affirm.
{¶ 3} Carter was found guilty of one count of rape, a first-degree felony in violation of R.C. 2907.02(A)(2) ; three counts of kidnapping, first-degree felonies in violation of R.C. 2905.01(A)(4) ; and two counts of gross sexual imposition, fourth-degree felonies in violation of R.C. 2907.05(A)(1). He was sentenced to a total of eight years and required to register as a Tier III sex offender.
I. Facts
{¶ 4} B.C., the daughter of Carter, accused Carter of kidnapping, rape, and forcing her to have unwanted sexual conduct with him. B.C. testified that her father, Carter, began making sexual advances towards her when she was in the seventh grade. B.C. recalled one moment when she and Carter were lying next to each other watching movies. Carter told B.C. that he was cold and requested that she move closer to him. When B.C. moved closer to him, she felt Carter's pelvis poking her. Carter continued to push his pelvis closer to B.C., and his actions made B.C. feel confused and as if she could not get up and walk away.
{¶ 5} Once Carter moved out of the family home, as a result of divorce from B.C.'s mother, B.C. would see Carter at his sister's house. One occasion when B.C. was visiting Carter at Carter's sister's house, B.C. awoke to Carter hugging her around the waist. Carter also began pushing his pelvis against B.C. and groping her chest. Then Carter used his hand to rub *678 B.C.'s vagina. B.C. testified that Carter rubbed the inside and outside of her vagina with his fingers. B.C. felt as if she could not get up and walk away from Carter.
{¶ 6} Another incident took place at Carter's sister's new home where B.C. and Carter were sleeping on the floor. B.C. awoke to Carter rubbing her breasts. Carter then told B.C. that he loved her. The next morning Carter told B.C. that they needed to stop having sexual contact, but he continued. B.C. did not feel as if she could get away from Carter while he was touching her.
{¶ 7} B.C. also visited Carter at Carter's father's home. During a visit, B.C. woke to Carter holding her around the waist while pushing his pelvis against her. B.C. tried to move away from him, but Carter pulled her closer. Carter began groping B.C.'s breast and then pulled her pants down. Carter got out of the bed, and B.C. heard him open a plastic wrapper. Carter then came back to the bed and laid down behind B.C. B.C. felt Carter touch her vagina both inside and out, but was unsure of what he was touching her with.
{¶ 8} B.C. sent her mother, S.C., a text message detailing the events of Carter touching her. S.C. went to the police, and B.C. was first interviewed by Lauren Hennessey ("Hennessey"), a social service worker with the Department of Children and Family Services. During her testimony, the state asked her, "When you met with [B.C.], what types of information is it important for you to learn for you to make the referrals that you are tasked with making?" (Tr. 323.) Hennessey responded by stating, "[s]o we make referrals typically, you know, when there's credible, consistent disclosures, which hers was. And, you know, she was seeking-the family was seeking medical-not medical, mental health treatment as well because of what had happened." (Tr. 323.)
{¶ 9} B.C.'s case was referred to Julie Loyke ("Loyke"), a certified pediatric nurse practitioner who performs non-acute sexual abuse examinations for the Cleveland Care Clinic. Loyke testified as to her experiences practicing as a Sexual Assault Nurse Examiner ("SANE"). Loyke described her conversation with B.C., and the procedures used to interview and examine B.C.
{¶ 10} At the end of the trial, Carter was found guilty and sentenced to eight years in prison. Carter filed this timely appeal arguing six assignments of error for our review:
I. The [s]tate failed to present sufficient evidence of the offenses charged;
II. The appellant's convictions are against the manifest weight of the evidence;
III. The trial court erred in allowing the [s]tate's witness to opine regarding the appellant's guilt, in violation of the Ohio Rules of Evidence, the right to a fair trial, and the Due Process Clause of the Fourteenth Amendment of the United States Constitution;
IV. Appellant was denied due process and a fair and impartial trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Section 16 of the Ohio Constitution based on prosecutorial misconduct;
V. The appellant was denied effective assistance of counsel in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution ; and
VI. The trial court erred in allowing the admission of the accuser's text *679 message allegation which was offered for the sole purpose of demonstrating a prior consistent message without first showing recent fabrication, and which denied the appellant due process and the right to a fair trial.
II. Sufficiency of Evidence
A. Standard of Review
{¶ 11} Claiming insufficient evidence,
raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. State v. Thompkins , 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks , 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.
State v. Herring , 8th Dist., 2017-Ohio-743, 86 N.E.3d 133, ¶ 16.
B. Law and Analysis
{¶ 12} Carter argues that the state failed to present sufficient evidence of the offenses charged.
The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. State v. Bowden , 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598 [2009 WL 2186608], ¶ 13. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Id. at ¶ 12. State v. Jenks , 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.
State v. Pridgett , 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, [2016 WL 762671], ¶ 15.
{¶ 13} Carter was convicted of one count of rape, in violation of R.C. 2907.02(A)(2) ; three counts of kidnapping, in violation of R.C. 2905.01(A)(4) ; and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1). The statutes read as follows:
No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
R.C. 2907.02(A)(2).
No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.
R.C. 2905.01(A)(4).
No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
R.C. 2907.05(A)(1).
{¶ 14} Carter argues that the evidence was insufficient to support his conviction of rape because B.C. could not testify with certainty that Carter used his fingers to penetrate her vagina. However, B.C. did testify that Carter was rubbing *680 her vagina both on the outside and inside. (Tr. 227.) When asked if she felt like she could walk away or make it stop, B.C. replied "no." (Tr. 228.) Because of the parent-child relationship that existed between Carter and B.C., Carter did not have to physically force B.C. to engage in sexual intercourse. "In certain scenarios, especially those involving parent-child relationships, a child may feel compelled or psychologically coerced into submitting to her aggressor for reasons other than an overt show of force or threats of force." State v. Weems , 8th Dist. Cuyahoga No. 102954, 2016-Ohio-701, 2016 WL 763101, ¶ 25. Citing State v. Jordan , 8th Dist., 2017-Ohio-381, 83 N.E.3d 364, ¶ 14. We find that B.C.'s testimony is sufficient evidence to conclude that Carter did commit rape.
{¶ 15} Carter also contends that the evidence was insufficient to support his kidnapping conviction. However, Carter took B.C. from her home to his father's and sister's homes. On two occasions at Carter's sister's home, B.C. woke up to Carter groping her breasts, pushing his pelvis against her, and rubbing her vagina. B.C. testified that she felt she could not get up and walk away. At Carter's father's residence, B.C. stated that she awoke to Carter groping her breasts and using an unidentifiable object to penetrate her vagina. B.C. felt as if she could not walk away or make it stop. Given B.C.'s testimony to the facts of being removed from her home to go with Carter, and Carter engaging in sexual activity with her, there is sufficient evidence to prove that Carter engaged in kidnapping.
The kidnapping statute punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant. State v. Price , 8th Dist. Cuyahoga No. 99058, 2013-Ohio-3912 [2013 WL 4988360], ¶ 28 ; State v. Smith , 9th Dist. Summit Nos. 23468 and 23464, 2007-Ohio-5524 [2007 WL 3010383], ¶ 41, quoting State v. Matthieu , 3d Dist. Mercer Nos. 10-02-04 and 10-02-05, 2003-Ohio-3430 [2003 WL 21496413], ¶ 17.
Jordan at ¶ 31. In addition, given the facts of repeated forced sexual conduct, there is also sufficient evidence to convict Carter of gross sexual imposition. Carter's first assignment of error is overruled.
III. Manifest Weight of the Evidence
A. Standard of Review
{¶ 16} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether,
"[T]here is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." (Emphasis sic.) In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " State v. Thompkins , 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting State v. Martin , 20 Ohio App.[3d]2d 172, 175, 458 N.E.2d 717 (1983).
State v. Leonard , 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81.
{¶ 17} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." Thompkins , 78 Ohio St.3d 380, 386, 678 N.E.2d 541.
Weight of the evidence concerns "the inclination of the greater amount of credible evidence , offered in a trial, to *681 support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them." (Emphasis added.)
Id.
B. Law and Analysis
{¶ 18} Carter contends that his convictions were against the manifest weight of the evidence. "A manifest weight challenge questions whether the state met its burden of persuasion at trial." State v. Bowden , 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, 2009 WL 2186608, ¶ 12.
Although an appellate court reviews credibility when considering the manifest weight of the evidence, the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able " 'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' "
State v. Kurtz , 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, 2013 WL 3582078, ¶ 26, quoting State v. Wilson , 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.
{¶ 19} Specifically, Carter argues that because his sister testified that she did not see B.C. at her home during the time period in which B.C. states Carter molested her, her testimony should have been weighed greater then B.C.'s testimony. However, the jury heard Carter's sister's testimony as well as B.C.'s testimony, and the jury concluded that B.C.'s testimony was more credible. The jury was able to view and observe both Carter's sister's and B.C.'s testimony.
In State v. Bruno , 8th Dist. Cuyahoga No. 84883, 2005-Ohio-1862 [2005 WL 926995], we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. DeHass , 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; State v. Eley , 56 Ohio St.2d 169, 383 N.E.2d 132 (1978).
State v. Anderson , 8th Dist. Cuyahoga No. 90460, 2008-Ohio-4240, 2008 WL 3870696, ¶ 11.
{¶ 20} From the evidence presented, the trier of fact could reasonably conclude that the prosecution proved the offenses beyond a reasonable doubt. Carter has not demonstrated that his convictions were against the manifest weight of the evidence. Carter's second assignment of error is overruled.
IV. Prejudicial Testimony
A. Standard of Review
{¶ 21} "It is well established that, pursuant to Evid.R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court." Caruso v. Leneghan , 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, 2014 WL 1775577, ¶ 32, quoting State v. Heinish , 50 Ohio St.3d 231, 553 N.E.2d 1026 (1990).
Further, Evid.R. 702, which controls the admission of expert testimony during the course of trial, provides that " '[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine *682 a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.' " The determination of whether a witness possesses the qualifications necessary to allow expert testimony lies within the sound discretion of the trial court. In addition, the qualification of an expert witness will not be reversed unless there is a clear showing of an abuse of discretion on the part of the trial court.
Id. at ¶ 34, quoting State v. Maupin , 42 Ohio St.2d 473, 330 N.E.2d 708 (1975) ; State v. Minor , 47 Ohio App.3d 22, 546 N.E.2d 1343 (10th Dist.1988).
{¶ 22} In addition,
[T]he decision whether to admit or to exclude evidence rests within the sound discretion of the trial court. State v. Brown , 8th Dist. Cuyahoga No. 99024, 2013-Ohio-3134 [2013 WL 3808558], ¶ 50, citing State v. Jacks , 63 Ohio App.3d 200, 207, 578 N.E.2d 512 (8th Dist.1989). Therefore, an appellate court that reviews the trial court's decision with respect to the admission or exclusion of evidence must limit its review to a determination of whether the trial court committed an abuse of discretion. Id. , citing State v. Finnerty , 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989). An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. State v. Minifee , 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146 [2013 WL 3808869], ¶ 23, citing Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).
State v. Marshall , 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, 2015 WL 3899064, ¶ 16.
B. Law and Analysis
{¶ 23} Carter argues that the trial court erred in allowing the state's witnesses to opine regarding the appellant's guilt, in violation of the Ohio rules of evidence, violation of the right to a fair trial and in violation of the due process clause of the Fourteenth Amendment of the United States Constitution. Specifically, Carter argues that the testimonies of Hennessey and Loyke regarding B.C.'s accusations being credible and consistent disclosures amounted to prejudicial and impermissible testimony. "The admission or exclusion of evidence rests within the sound discretion of the trial court." Caruso , 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, ¶ 33, quoting Jacks at 207, 578 N.E.2d 512.
{¶ 24} Hennessey was asked by the state, "what types of information is it important for you to learn for you to make the referrals that you are tasked with making?" (Tr. 323.) Hennessey responded, "[s]o we make referrals typically, you know, when there's credible, consistent disclosures, which hers was. And, you know, she was seeking-the family was seeking medical-not medical, mental health treatment as well because of what had happened." Carter argues that the testimony bolsters the allegations. We disagree.
{¶ 25} It is clear that the state did not ask Hennessey what her opinion was regarding the veracity of B.C. Rather, the record shows that the state asked Hennessey, as a professional, what is important for her to learn from an individual to make necessary referrals?
An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. State v. Boston , 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989). However, an expert may provide testimony that supports "the *683 truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." State v. Stowers , 81 Ohio St.3d 260, 262-263, 690 N.E.2d 881 (1998).
State v. Ervin , 8th Dist. Cuyahoga No. 80473, 2002-Ohio-4093, 2002 WL 1824977, ¶ 34. We find that Hennessey's testimony was admissible under Evid.R. 703.
{¶ 26} Additionally, Hennessey testified that her interview began with her getting to know B.C. and information about B.C.'s family. After Hennessey learned of the disclosures, it allowed her to make referrals.
STATE: During the course of the interview, did you learn the information that you required to determine what referrals you needed to make for B.C.?
HENNESSEY: Yes. Based on the interview, she was referred to the Cleveland Care Clinic.
STATE: What is the Cleveland Care Clinic?
HENNESSEY: It's where she can go and get a medical assessment, like a physical exam, and then also another interview with the professional. They're trained as well.
STATE: Is the Care Clinic focused on a particular area of medical?
HENNESSEY: They do. They focus on sexual assault, sexual abuse cases.
STATE: That referral was based on your interview of B.C.?
HENNESSEY: Yes, based on the information she shared with me.
STATE: Where is the Care Clinic run through?
HENNESSEY: The Cleveland Clinic, the main campus, substance abuse.
STATE: Did you make any other referrals?
HENNESSEY: The family was referred to Cleveland Rape Crisis as well.
(Tr. 324-325.)
{¶ 27} Permissible testimony for purposes of medical diagnosis or treatment fall under Evid.R. 803(4). It states,
[S]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
Pursuant to Ohio case law and Evid.R. 803(4), statements made by a social worker for the purposes of medical diagnosis or treatment are admissible. State v. Boston , 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), citing State v. Krzywkowski , 8th Dist. Cuyahoga No. 80392, 2002-Ohio-4438, 2002 WL 1987257, ¶ 120. Hennessey's role was important in determining what type of subsequent treatment was necessary for B.C. We find that Hennessey's role was pertinent to medical treatment or diagnosis, and thus her testimony falls clearly within the exception to the hearsay rule under Evid.R. 803(4). Id. at ¶ 123.
{¶ 28} The state asked Loyke,
[T]hrough that specialized training and through that years of experience in all of those patients, have you learned things about sexual assault, child sexual assault victims in particular that you would not have suspected prior to your experience and training?
(Tr. 354.) Loyke responded,
I would have to say yes, that I have been part of the process of every individual child that presents with sexual assault has a story to tell and has a different story to tell. There is no way that we could systemically categorize every *684 situation that we would see. It is important that they tell their story and it's important that we believe them.
Id.
{¶ 29} Carter argues that Loyke's statement about the importance of believing a child who tells their sexual assault story was prejudicial and significantly impacted his trial. The SANE nurse was asked whether she made any recommendations in B.C.'s case. In response, she stated:
Yes. I recommended that she continue with counseling. I reassured her that the exam was normal, but that even though it was normal, we still believe her disclosure and that we will be following through with whatever is required on our end to help her along.
(Tr. 367-368.)
{¶ 30} Like the social worker, Loyke testified that she recommended counseling. However, unlike Hennessey, Loyke testified that she believed B.C.'s disclosures.
This court has held that it is reversible error to admit testimony from a purported expert or lay witness attesting to the believability of another's statements. Boston , 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989). "[I]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." State v. Pizzillo , 7th Dist. Carroll No. 746, 2002-Ohio-446 [2002 WL 75936], citing Boston at 129 [545 N.E.2d 1220].
State v. Wilson , 8th Dist. Cuyahoga No. 104333, 2017-Ohio-2980, 2017 WL 2293074, ¶ 48.
{¶ 31} However, Carter did not object to Loyke's testimony at trial.
The trial court has broad discretion in the admission of evidence and, unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere. State v. Cooper , 8th Dist. Cuyahoga No. 86437, 2006-Ohio-817 [2006 WL 439906], citing State v. Hymore , 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). Moreover, if trial counsel fails to object to the admission of certain evidence or testimony, the objection is waived unless there is plain error in the admission. To prevail under a plain error analysis, a defendant bears the burden of demonstrating that, but for the error, the outcome of the trial clearly would have been different. State v. Alexander , 8th Cuyahoga No. 87109, 2006-Ohio-4760 [2006 WL 2627440] ; see Crim.R. 52(B). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. , citing State v. Long , 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).
State v. Mallette , 8th Dist. Cuyahoga No. 87984, 2007-Ohio-715, 2007 WL 530187, ¶ 12.
{¶ 32} Upon review, we find that Carter has not demonstrated that but for Loyke's testimony, the outcome of the trial would have been different. B.C., the victim, testified and the jury was able to evaluate her credibility. Carter's third assignment of error is overruled.
V. Prosecutorial Misconduct
A. Standard of Review
{¶ 33} In general,
[t]he test for prosecutorial misconduct during closing argument is whether the remarks made by the prosecutor were improper and, if so, whether they prejudicially affected a substantial right of the accused.
*685 State v. White , 82 Ohio St.3d 16, 22, 1998-Ohio-363, 693 N.E.2d 772 (1998). For this determination, an appellate court should consider the nature of the remarks, whether an objection was made by counsel, whether corrective instructions were given by the court, and the strength of the evidence against the defendant. State v. Braxton , 102 Ohio App.3d 28, 41, 656 N.E.2d 970 (8th Dist.1995). Additionally, "isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v. Gapen , 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, citing Donnelly v. DeChristoforo , 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).
State v. Harris , 8th Dist., 2017-Ohio-2751, 90 N.E.3d 342, ¶ 84.
B. Law and Analysis
{¶ 34} In Carter's fourth assignment of error, he argues that he was denied due process and a fair and impartial trial based on prosecutorial misconduct. In their closing argument, the state referred to the testimonies of Loyke and Hennessey. Carter argues that references to these testimonies is impermissible. However, "a prosecutor has considerable latitude in his closing argument." State v. Maurer , 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). The state is largely free to comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott , 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). Id. "In order for this Court to reverse a conviction on the grounds of prosecutorial misconduct, we must find that (1) the remarks were improper and (2) that they prejudicially effected substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883." State v. Elliott , 8th Dist. Cuyahoga No. 91999, 2009-Ohio-5816, 2009 WL 3647081, ¶ 23.
{¶ 35} Carter also contends that the state "vouched for" B.C.'s credibility during the closing argument. However, the Ohio Supreme Court has held, "the effect of counsel's misconduct 'must be considered in the light of the whole case.' " State v. Durr , 58 Ohio St.3d 86, 94, 568 N.E.2d 674 (1991), quoting Maurer , 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984).
The "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips , 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). As such, the defendant must show that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. State v. Loza , 71 Ohio St.3d 61, 641 N.E.2d 1082 (1994).
Id. at ¶ 25.
"[T]he conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." Id. (Other citations omitted.) Both the defense and prosecution have wide latitude in summation. State v. Lott , 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). "Prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." Id. at 166 [555 N.E.2d 293].
Id. at ¶ 26.
{¶ 36} Carter did not object to the prosecutor's closing argument at trial. "Where the defendant fails to object to the alleged misconduct, he waives all but plain error." Lott , 51 Ohio St.3d at 167, 555 N.E.2d 293 (1990), citing State v. Johnson , 46 Ohio St.3d 96, 102, 545 N.E.2d 636, 642 (1989) ;
*686 State v. Salahuddin , 8th Dist. Cuyahoga No. 90874, 2009-Ohio-466, 2009 WL 270498, ¶ 55, citing State v. Slagle , 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992).
"Pursuant to Crim.R. 52(B), plain error or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long , 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. State v. Moreland , 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899 (1990)." State v. Phillips , 74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643 (1995).
Elliott , 8th Dist. Cuyahoga No. 91999, 2009-Ohio-5816, ¶ 29.
{¶ 37} Carter does not demonstrate that but for the state's statements the outcome of the trial would have been any different. As established in assignment of error one, there was sufficient evidence to convict Carter, and no evidence that his guilt was determined by the prosecutor's arguments. Therefore, Carter's fourth assignment of error is overruled.
VI. Admissibility of Evidence
A. Standard of Review
{¶ 38} "A trial court has broad discretion in admitting or excluding evidence, and a trial court's ruling on the admissibility of evidence will be upheld absent an abuse of discretion and a showing of material prejudice." (Internal citations omitted.) State v. Peterson , 8th Dist. Cuyahoga Nos. 100897 and 100899, 2015-Ohio-1013, 2015 WL 1249680, ¶ 139. "An abuse of discretion implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. Blakemore , 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140." Id. at ¶ 173.
B. Law and Analysis
{¶ 39} In Carter's sixth assignment of error, he argues that the trial court erred in allowing the admission of B.C.'s text message into evidence. We will review it before his fifth assignment of error. "Hearsay is by definition a 'statement,' defined as '(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.' Evid.R. 801(A)." State v. Dye , 8th Dist. Cuyahoga No. 103907, 2016-Ohio-8044, 2016 WL 7158739, ¶ 33. Carter contends that the text messages were an out-of-court statement being offered for the truth of the matter asserted, and therefore hearsay. We find that Carter's claims have no merit. The text messages were offered into evidence to explain how B.C.'s mother became aware of Carter molesting B.C.
Evid.R. 901 governs the authentication of demonstrative evidence such as recordings of telephone conversations and text messages. The threshold for admission is quite low, as the proponent need only submit "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). This means that "the proponent must present foundational evidence that is sufficient to constitute a rational basis for a jury to decide that the primary evidence is what its proponent claims it to be." State v. Payton , 4th Dist. Ross No. 01CA2606, 2002-Ohio-508 [2002 WL 184922]. A proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence. State v. Williams , 64 Ohio App.2d 271, 274, 413 N.E.2d 1212 (8th Dist.1979).
*687 State v. Glenn , 8th Dist. Cuyahoga No. 97314, 2012-Ohio-3075, 2012 WL 2580773, ¶ 25.
{¶ 40} In addition,
[m]ultiple courts have held that text messages received on a defendant's cell phone are not hearsay when the messages are not offered for the truth of the matter asserted. See State v. Crocker , 2015-Ohio-2528, 38 N.E.3d 369 (4th Dist.) (incriminating text messages received on the defendant's cell phone were extracted by a forensic computer specialist from the Ohio State Highway Patrol and the court held the messages were not hearsay because they were not offered to prove the truth of the matter asserted, but rather to explain the defendant's activities and give context to the defendant's responses); State v. Miller , 1st Dist. Hamilton No. C-130774, 2015-Ohio-330 [2015 WL 408259], at ¶ 17 (text messages sent to the defendant were not hearsay because they were not offered for the truth of the matter asserted, because they "put in context [defendant's] statements about being angry").
State v. Norris , 2d Dist. Clark No. 2015-CA-22, 2016-Ohio-5729, 76 N.E.3d 405, ¶ 32.
{¶ 41} Also,
before text messages may be admitted, they must be properly authenticated. State v. Irwin , 2d Dist. Montgomery No. 26224, 2015-Ohio-195 [2015 WL 302811], at ¶ 20. The threshold standard for authenticating evidence is low. State v. Wiley , 2d Dist. Darke No. 2011 CA 8, 2012-Ohio-512 [2012 WL 443977], ¶ 11. In this regard, " Evid.R. 901(A) requires, as a condition precedent to the admissibility of evidence, a showing that the matter in question is what it purports to be." State v. Simmons , 2d Dist. Montgomery No. 24009, 2011-Ohio-2068 [2011 WL 1646819], ¶ 12. Evid.R. 901(B) provides examples of numerous ways that the authentication requirement may be satisfied, the most common of which is testimony that a matter is what it is claimed to be under Evid.R. 901(B)(1). State v. Renner , 2d Dist. Montgomery No. 25514, 2013-Ohio-5463 [2013 WL 6576714], ¶ 30.
Id. at ¶ 33.
{¶ 42} However,
" '[i]n most cases involving electronic print media, i.e., texts, instant messaging, and e-mails, the photographs taken of the print media or the printouts of those conversations are authenticated, introduced, and received into evidence through the testimony of the recipient of the messages.' " Irwin at ¶ 21, quoting State v. Roseberry , 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233, at ¶ 75 (8th Dist.). In Roseberry , the Eighth District Court of Appeals noted that the state could have properly admitted text messages from the defendant through the victim's testimony, "because she was the recipient of the text messages, had personal knowledge of the content, and could [identify] the sender of the messages." Roseberry at ¶ 75.
Id. at ¶ 34.
{¶ 43} Carter also argues that B.C.'s text messages were inadmissible because the messages were an out-of-court statement being offered for the truth of the matter asserted.
Pursuant to Evid.R. 801(D)(1)(b), a declarant's prior consistent statement is not hearsay if (1) the declarant testifies at trial and is subject to cross-examination, (2) the statement is consistent with his prior testimony, and (3) it is offered to rebut an express or implied charge of recent fabrication. Such statements may be used as substantive evidence.
*688 State v. Pritchard , 8th Dist. Cuyahoga No. 78497, 2001 WL 898427 (Aug. 2, 2001). B.C. authenticated the text messages she sent to S.C. by testifying that the text messages proffered as evidence were indeed the ones she sent. The text messages were not entered into evidence as proof that Carter molested his daughter, but rather to show how B.C.'s mother became aware of the alleged molestation. Therefore, Carter's sixth assignment of error is overruled.
VII. Ineffective Assistance of Counsel
A. Standard of Review
{¶ 44} Reversal of a conviction for ineffective assistance of counsel
requires a defendant to show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. State v. Smith , 89 Ohio St.3d 323, 327, 731 N.E.2d 645 (2000), citing Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. See State v. Bradley , 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. State v. White , 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998).
State v. Price , 8th Dist. Cuyahoga No. 103282, 2016-Ohio-711, 2016 WL 764085, ¶ 17.
B. Law and Analysis
{¶ 45} In Carter's fifth assignment of error, he argues that he was denied effective assistance of counsel.
To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. Strickland v. Washington , 466 U.S. at 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ; Ohio v.Bradley , 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.
Id. at ¶ 18.
In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. Strickland at 689 [104 S.Ct. 2052]. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." State v. Pawlak , 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175 [2014 WL 2167887], ¶ 69.
Id. at ¶ 19.
{¶ 46} Carter contends that defense counsel was ineffective for failing to object and allowing the irrelevant and prejudicial testimony of Loyke and Hennessey. We find Carter's argument lacks merit. We decided in Carter's third assignment of error that Hennessey's testimony was admissible and pertinent to the charge, and Loyke's testimony did not affect the outcome of the trial.
[W]e find that defense counsel's decisions not to object constituted trial strategy. See State v. Gross , 97 Ohio St.3d 121, 150-151, 2002-Ohio-5524, 776 N.E.2d 1061, citing State v. Hartman , 93 Ohio St.3d 274, 296, 754 N.E.2d 1150 [ (2001) ] (failure to object can be legitimate tactical decision); State v. Issa , 93 Ohio St.3d 49, 68, 752 N.E.2d 904 [ (2001) ] , citing State v. Taylor , 78 Ohio St.3d 15, 676 N.E.2d 82 (1997) ("Counsel *689 is certainly not deficient for failing to raise a meritless issue"). A failure to object, in and of itself, does not rise to the level of ineffective assistance of counsel. "Because 'objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder,' Jacobs , Ohio Evidence (1989), at iii-iv, competent counsel may reasonably hesitate to object * * *." State v. Campbell , 69 Ohio St.3d 38, 53, 630 N.E.2d 339, 352 (1994). Accordingly, we find defense counsel's decision not to object constituted a legitimate trial tactic. Such a decision, therefore, falls within the realm of reasonable professional assistance and is not ineffective.
State v. Jackson , 8th Dist. Cuyahoga No. 86105, 2006-Ohio-174, 2006 WL 134813, ¶ 88.
{¶ 47} Carter also argues that defense counsel was ineffective for failing to object to the use and admission into evidence of B.C.'s text allegation that she was molested by Carter. "A defense counsel's failure to object is not ineffective assistance of counsel if the evidence is admissible." As the Supreme Court of Ohio stated, "Counsel is certainly not deficient for failing to raise a meritless issue. State v. Taylor , 78 Ohio St.3d 15, 31, 1997-Ohio-243, 676 N.E.2d 82." State v. Jackson , 8th Dist. Cuyahoga No. 86105, 2006-Ohio-174, 2006 WL 134813, ¶ 87. The text message sent from B.C. to S.C. was admissible.
{¶ 48} Carter contends that defense counsel was ineffective for failing to attempt to admit into evidence the results of a lie detector test that indicated that Carter was telling the truth. "The results of a polygraph examination may be admissible at trial only under limited conditions. Those conditions were enunciated by the Ohio Supreme Court in State v. Souel , 53 Ohio St.2d 123, 372 N.E.2d 1318 (1978)." State v. Banner , 8th Dist. Cuyahoga No. 94078, 2010-Ohio-5592, 2010 WL 4684726, ¶ 20.
Absent meeting these specific conditions, neither party may introduce the result of such an examination. In State v. Bates , 8th Dist. Cuyahoga No. 43904 [1982 WL 5268] (Apr. 1, 1982), we stated that since "the results of polygraph tests are inadmissible and precluded from consideration by the jury, the mere offer or refusal to undergo such test should also be excluded because unwarranted inferences are likely to be drawn as to defendant's guilt or innocence." Id. , citing State v. Hegel , 9 Ohio App.2d 12, 222 N.E.2d 666 (1964) ; State v. Smith , 113 Ohio App. 461, 465, 178 N.E.2d 605 (1960).
Id. at ¶ 21. "It is well established in Ohio that the results of a polygraph test are not admissible to show the guilt or innocence of the accused." (Internal citations omitted.) State v. Yuhas , 8th Dist. Cuyahoga No. 36219, 1977 WL 201099 (June 9, 1977). Because the results of Carter's polygraph test are inadmissible to demonstrate his guilt or innocence, his argument is baseless.
{¶ 49} Carter argues that his defense counsel was ineffective because counsel failed to object to the state's closing arguments.
However, a reasonable attorney may decide not to interrupt his opponent's closing argument. State v. Keene , 81 Ohio St.3d 646, 668, 693 N.E.2d 246 (1998). Objections can " 'disrupt the flow of a trial' " and " 'are considered technical and bothersome by the factfinder.' " State v. Campbell , 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (1994), quoting Jacobs, Ohio Evidence (1989) iii-iv. A decision not to interrupt during closing arguments reflects an "objective standard of reasonable representation."
*690 Ohio v.Bradley , 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.
State v. Myers , 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 153. Therefore, defense counsel was not ineffective, and Carter's fifth assignment of error is overruled.
{¶ 50} Judgment is affirmed.
MARY EILEEN KILBANE, P.J., and EILEEN T. GALLAGHER, J., CONCUR