[Cite as *State v. Handyside*, 2019-Ohio-2329.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                                   No. 107586

    v. :

JOHN HANDYSIDE, III :

    Defendant-Appellant. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-627283-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecutor, and Michael Lisk and Erin Stone, Assistant County Prosecutors, *for appellee.*

Patrick S. Lavelle, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Appellant-defendant John Handyside, III ("Handyside") appeals his conviction and asks this court to reverse the judgment of the trial court. We affirm the trial court's decision.

{¶ 2} After a bench trial, Handyside was convicted of abduction, a third-degree felony in violation of R.C. 2905.02(A)(2); and assault, a first-degree misdemeanor in violation of R.C. 2903.13(A). Handyside was sentenced to a total of 18 months imprisonment.

## I. Facts and Procedural History

{¶ 3} On March 26, 2018, Sarah Vidmar ("Vidmar") went for a run. As she was running, she noticed Handyside crossing the street towards her. Once Vidmar realized that Handyside was running towards her, she tried to get out of his way and tripped over an obstruction. When she fell, Handyside jumped on top of her and held her down. Vidmar repeatedly told Handyside to stop, but he continued to hold her down, grabbing, pushing, and hitting her in the face. Vidmar broke free, and attempted to run, but Handyside grabbed her again and pushed her back down. Vidmar began yelling for help. Justin Frankmann ("Frankmann"), who was out walking his dog, heard Vidmar yelling for help, and ran to assist. Frankmann pushed Handyside off of Vidmar. Without saying a word, Handyside walked away.

{¶ 4} Galen Fuller ("Fuller") and Veronica Rose ("Rose") witnessed the attack from their car. Both saw Handyside dart across the street and punch Vidmar in the face. Fuller, who was driving the car, turned around and drove to the location of the attack. He jumped out of the vehicle and confronted Handyside along with Frankmann. Rose called 911, and Fuller followed Handyside in his vehicle while Rose was on the phone with 911, giving updates on Handyside's location.

{¶ 5} Two police officers responded to the emergency call and interviewed Vidmar. She told them that while on her daily run Handyside attacked her. The officers were then notified of Handyside's location and detained him upon their arrival. Handyside told the officers that he saw a woman fall and tried to help her. The officers brought Handyside back to the scene of the incident, where Vidmar was waiting. Vidmar and the other witnesses identified Handyside as the man who attacked her.

{¶ 6} Handyside was charged with kidnapping, with an attached sexual motivation specification, abduction, gross sexual imposition, and assault. Handyside, pursuant to Crim.R. 29, asked the trial court "to direct verdicts of acquittal" as to the sexual motivation specification contained in Count 1, kidnapping, as well as Count 3, the gross sexual imposition; the court granted the motion as to both specifications. (Tr. 95-96.) The trial court found Handyside not guilty of kidnapping, but guilty of abduction and assault. The trial court sentenced Handyside to 18 months imprisonment, and Handyside filed this appeal of his conviction of the abduction charge only. He assigns two errors for our review:

I. The [trier of fact's] determination in lower court was against the manifest weight of evidence; and

II. There was not sufficient evidence presented to the trier of fact in the lower court proceeding to convict the appellant of Count 2 of the indictment.

## II. Sufficiency of the Evidence

### A. Standard of Review

{¶ 7} Claiming insufficient evidence,

> raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*State v. Herring*, 2017-Ohio-743, 81 N.E.3d 133, ¶ 16 (8th Dist.).

### B. Whether there was Sufficient Evidence Presented to Convict the Appellant of the Crime Charged in Count Two of the Indictment

{¶ 8} Handyside argues that there was not sufficient evidence to convict him of abduction because he did not knowingly use force or made threats towards Vidmar.

> "'The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id.* at ¶ 12. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.'"

*State v. Carter*, 2018-Ohio-2238, 114 N.E.3d 673, ¶ 12 (8th Dist.), quoting *State v. Pridgett*, 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, ¶ 15.

{¶ 9} Handyside was convicted of abduction, in violation of R.C. 2905.02(A)(2). The statute reads as follows: "No person, without privilege to do so, shall knowingly do any of the following: By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear." R.C. 2905.02(A)(2). In *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 23, the Ohio Supreme Court defined the term "knowingly" as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 10} Handyside argues that he saw Vidmar fall to the ground and was only trying to assist her. Handyside does not dispute that Vidmar's liberty was restrained or that she was in fear for her safety; however, Handyside argues that there is no evidence that he knowingly used force or made threats toward Vidmar. Handyside's version of the events is completely different than the victim's and witnesses' accounts. Vidmar testified that Handyside held her down, punched her, grabbed her, and when she broke free, pushed her down again.

{¶ 11} Additionally, three witnesses saw Handyside attack Vidmar and punch her in the face. Vidmar testified, "[b]ut like I said, at that time once I was down, I was trying to get back up and the individual was making it so that I either

couldn't get back up or I couldn't get away from him despite struggling."  (Tr. 33-34.)

> Force is defined as:  "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).   In *State v. Gregg*, 2d Dist. Champaign No. 91-CA-15, 1992 Ohio App. LEXIS 5481 (Oct. 26, 1992), the court explained: "O.R.C. 2901.01(A) does not provide for any measure of the physical exertion that might constitute force, but instead looks to the purpose for which the physical exertion, however slight, has been employed.  If that purpose is to overcome a barrier against the actor=s conduct, whether that barrier is in the will of a victim or the closed but unlocked door of a home, the physical exertion employed to overcome the barrier may constitute force."  *See also, State v. Austin*, 2d Dist. Montgomery No. 20445, 2005-Ohio-1035; *State v. Johnson*, 8th Dist. Cuyahoga Nos. 81692 and 81693, 2003-Ohio-3241.   Furthermore, "force may properly be defined as 'effort' rather than 'violence' in a charge to the jury."

*Johnson, supra*, citing *State v. Lane*, 50 Ohio App.2d 41, 45, 361 N.E.2d 535 (10th Dist.1976).

{¶ 12}  The evidence demonstrates that Handyside knowingly restrained the liberty of Vidmar and placed her in fear.

> Under R.C. 2905.02(A)(2), a person commits abduction if he knowingly, "[b]y force or threat, restrain[s] the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear."  The element of restraining another's liberty may be proven by evidence that the defendant has "limit[ed] one's freedom of movement in any fashion for any period of time." *State v. Wright*, 8th Dist. No. 92344, 2009-Ohio-5229, at ¶ 23 (citations omitted).

*State v. Badgett*, 8th Dist. Cuyahoga No. 95146, 2011-Ohio-1245, ¶ 12.  The state presented sufficient evidence that Handyside, regardless of his stated purpose of assisting Vidmar, restrained her liberty by holding her down, hitting her about the

body and face, was aware that his conduct would cause a certain result: a risk of physical harm and fear.

{¶ 13} If believed, the evidence and testimonies submitted to the trial court would convince the average mind of the appellant=s guilt beyond a reasonable doubt. We conclude that there was sufficient evidence to convict Handyside of abduction. Therefore, Handyside=s second assignment of error is overruled.

## III.  Manifest Weight of the Evidence

### A.  Standard of Review

{¶ 14} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, & 25, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence=s effect of inducing belief. *Id.* at 386-387. In other words, a reviewing court asks whose evidence is more persuasive C the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶ 15} In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder, and not a jury:

> "'Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'"

*State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.), quoting *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125 (8th Dist.), citing *Thompkins* at 390. *See also State v. Kessler*, 8th Dist. Cuyahoga No. 93340, 2010-Ohio-2094, ¶ 13.

### B. Whether the Trial Court's Verdict was Against the Manifest Weight of Evidence

{¶ 16} Handyside argues that the same reasoning to determine that the evidence was insufficient to sustain a guilty verdict can be used to determine that the verdict was against the manifest weight of the evidence. We note that "[w]hen reviewing the sufficiency of the evidence the court does not weigh the credibility of the witnesses. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79." *State v. Marrero*, 10th Dist. Franklin No. 10AP-344, 2011-Ohio-1390, ¶ 10. When looking at the evidence and determining whether the state's evidence or Handyside's evidence is more persuasive, we must weigh the evidence and consider the credibility of the witnesses.

> Although, we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the

credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able "'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, & 24, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

*State v. Bridges*, 8th Dist. Cuyahoga No. 105440, 2018-Ohio-1388, & 12.

{¶ 17} Vidmar=s testimony was corroborated by three different random bystanders. All three witnesses saw Handyside attack Vidmar. There is no evidence to support that Handyside was merely helping Vidmar up from the ground. Vidmar testified that while she was running Handyside came right up to her. She stated, "I saw the individual coming right at me and I noticed that they were getting down in a crouch, almost getting ready to tackle me as if in a football stance, which I recognized because I used to play football in a co-ed league." (Tr. 32.) Vidmar also testified about the force that Handyside exerted to keep her down on the ground. She testified, "Initially I was pushing him off trying to break his grip at one point, because I couldn't get him to let me go, so I tried to turn my back and run. He grabbed me by the back, as you see right there, to pull me back towards him. * * * because every time I would try to stand, he would push me back down." (Tr. 44.)

{¶ 18} We find that the trial court was in the best position to determine the credibility of each witness. We do not find that the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

{¶ 19} Handyside=s first assignment of error is overruled.

**{¶ 20}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant=s conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, A.J., and
LARRY A. JONES, SR., J., CONCUR